# ENTRY ORDER

## 2022 VT 6

### SUPREME COURT DOCKET NO. 22-AP-002

### JANUARY TERM, 2022

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Larry L. Labrecque | } | DOCKET NO. 689-7-18-Wrcr |

Trial Judge: John R. Treadwell

In the above-entitled cause, the Clerk will enter:

¶ 1.    Defendant appeals the trial court's November 19, 2021, decision denying bail pursuant to 13 V.S.A. § 7553.  We affirm.

¶ 2.    Defendant is charged with three felonies: one count of repeated aggravated sexual assault of a child under 13 V.S.A. § 3253a(a)(8), one count of repeated aggravated sexual assault under 13 V.S.A. § 3253(a)(9), and one count of sexual assault of a victim under the age of eighteen who is entrusted to the actor's care under 13 V.S.A. § 3252(d).  Each of these charges carries a maximum sentence of life imprisonment. See 13 V.S.A. § 3253a(b); id. § 3253(b); id. § 3252(g).

## I.  Procedural History

¶ 3.    Defendant has sought to be released on conditions numerous times since he was initially held without bail in November 2018 following the trial court's weight-of-the-evidence hearing.  Because it is relevant to defendant's due process claim, we summarize the procedural history of defendant's attempts to seek bail here.

¶ 4.    Defendant moved for bail review on March 13, 2020, and his request was denied after a hearing on March 18, 2020.  Defendant then filed a motion to reconsider on April 1, 2020, which was consolidated with other COVID-19-related requests for bail review and ultimately denied in August 2020.  That same month, defendant appealed the trial court's denial of his motion to reconsider to this Court.  We affirmed in September 2020. State v. LaBrecque, 2020 VT 81, __ Vt. __, 249 A.3d 671 (mem.) [hereinafter LaBrecque I].  Defendant filed another motion for bail review on March 5, 2021, alleging that the State had violated his due process rights under the Vermont and federal constitutions by continuing to hold him without bail.  The trial court issued an entry order on March 24, 2021, stating that the matter would be scheduled

for an evidentiary hearing. Defendant filed a motion on April 15, 2021, asking to schedule the bail-review hearing and alleging that the hearing had not yet been scheduled. The court held the evidentiary hearing on May 6, 2021, and ultimately denied the motion that same day.

¶ 5. On May 26, 2021, defendant filed another motion for bail review, proposing that his family pay for a form of electronic monitoring to mitigate the court's concerns about public safety and defendant's flight risk. The trial court denied the motion without a hearing on June 10, 2021, holding that defendant did not meet the burden of overcoming the presumption of incarceration because the proposal did not fully address flight-risk concerns and failed to address public-safety concerns. Defendant appealed the denial. In July 2021, this Court reversed and remanded, holding that the trial court abused its discretion in not holding an evidentiary hearing and erred in not considering whether the electronic-monitoring proposal had an impact on the due process analysis. State v. LaBrecque, 2021 VT 58, __ Vt. __, 261 A.3d 632 (mem.) [hereinafter LaBrecque II].

¶ 6. On August 10, 2021, the trial court held a status conference and noted that a hearing on the May 2021 bail-review motion was necessary. Defendant filed an emergency motion for bail review on October 13, 2021, because the hearing had not yet taken place.

¶ 7. The trial court held a bail-review hearing on November 5, 2021. At this hearing, the court heard testimony from the president of Eastern Bail Bond Agency, Inc., a company that posts bail bonds for individuals in custody and provides electronic-monitoring services, about the Omnilink 500, which is a waterproof, fiberoptic monitoring system that uses both GPS and cellular data. Defense counsel, the State, and the court all questioned the witness about the system's efficacy. Defense counsel also proffered defendant's partner as a witness, who confirmed that she consented to defendant moving back in with her in the residence where they lived together prior to his incarceration and testified that, to her knowledge, there were no minors living in the building or next door besides her son. Defendant's partner also testified that the residence is "just down the road" from the local high school and middle school, and that she is out of the house working full-time at one position and an additional ten hours per week at another. She had worked a similar schedule during the time period in which her daughter alleges that defendant sexually assaulted her.

¶ 8. After testimony concluded, the court noted that there was no new challenge to its prior determination regarding the weight of the evidence, and that the primary issue before the court was to evaluate defendant's proposal for electronic monitoring under Second Circuit precedent in United States v. Briggs, 697 F.3d 98 (2d Cir. 2012). The parties did not contest the court's characterization of the issue before it. Defense counsel argued that defendant's continued incarceration violated his due process rights and that the proposed electronic monitoring would guarantee both defendant's appearance in court and public safety. The State argued that the first half of defendant's continued incarceration was attributable to defendant's actions rather than the State's actions, even including the State's decision to pause trials during the COVID-19 pandemic. The State asserted that the parties were ready for trial and that the State had not delayed defendant's trial date, and argued that there was still a compelling state-regulatory interest in incarcerating defendant because the evidence of guilt and risk to public safety were great under the Briggs analysis.

¶ 9.    The trial court denied defendant's motion at a status conference on November 19, 2021.  Defendant and his counsel were notified of the time and date of the status conference but did not appear.  In its ruling from the bench, the court found that the serious charges against defendant were based on alleged violent, repetitive conduct against a minor, and that the weight of the evidence was previously determined to be great.    The court also found that defendant is a long-term member of the community with family ties, including his own children, in the county where he sought release, and that he had consistent employment prior to his incarceration and would certainly seek out employment opportunities if he were released.  However, as described in further detail below, the court found defendant's criminal history to be concerning and expressed a lack of confidence in defendant's ability to abide by potential conditions of release. The court concluded that defendant's continued pre-trial detention was related to two compelling regulatory purposes: public safety and assuring defendant's presence at trial.

¶ 10.    In assessing whether defendant had been denied due process as a result of the delay in defendant's trial, the court considered the Briggs factors.  The court began by looking at the reasons for the delay.  It found that, even though delays related to the COVID-19 pandemic were attributable to the State, the State had not engaged in any intentional action to delay trial. The court also found that the delays prior to the pandemic were attributable to defendant's actions, including seeking and stipulating to extensions of time for discovery and motions for the appointment of new counsel.  Further, the court found that the likelihood of continued delay was limited because defendant's case was scheduled for jury selection within two months.  Because the delay was not intentional or unwarranted, and because defendant bore some responsibility for the initial delay prior to the pandemic, the court found that this responsibility-for-delay factor weighed against finding a due process violation.

¶ 11.    The court next considered whether the length of defendant's pre-trial detention was excessive in relation to the two regulatory purposes identified above, public safety and risk of flight.  It determined that the portion of the delay that was attributable to the State was not due to malfeasance or neglect, and that the length of his detention, though not routine, was not excessive in light of the other Briggs factors.  Therefore, the court concluded, defendant's due process rights were not violated.

¶ 12.    Finally, the court considered defendant's proposal for electronic monitoring.  It acknowledged that defendant's departure from his approved area would alert law enforcement quickly and that defendant's location would be known so long as the device was in place, thereby mitigating some concerns about the risk of flight.  However, it recognized that tracking defendant would not be the same as monitoring what defendant is doing.  Merely tracking defendant with electronic monitoring would not prevent him from associating with minors or otherwise being a threat to public safety.  While any intentional disconnection or loss of GPS or cellular service would notify law enforcement, it would also result in law enforcement's inability to track defendant's location.  The court also noted that despite defendant having the burden of proof, he failed to provide information about average law-enforcement-response times to prove that law enforcement would be able to quickly and adequately ensure that defendant remains within his approved areas.  Although the court found that the electronic monitoring could mitigate the risk of flight in some regards, it ultimately held that defendant failed to meet his burden of proving that the monitoring would ensure his return to trial and sufficiently protect the

community or alleviate concerns about public safety. As a result, the court denied defendant's motion.

¶ 13. Defendant appealed in December 2021. In his notice of appeal, defendant alleged that the court clerk advised defendant's counsel that the bail motion was denied but that the November 19 hearing was not held and there was no entry order or further hearing date related to his motion. We dismissed his appeal as premature on December 6, 2021, because the trial court did not issue a decision on his motion for bail review. State v. LaBrecque, No. 21-AP-278 (Vt. Dec. 6, 2021) (mem.).

¶ 14. On January 4, 2022, the trial court issued an entry order stating that it had issued its decision to deny bail on the record during the November 19 hearing. Defendant immediately filed a notice of appeal disagreeing with the court and stating that Odyssey did not indicate a decision was issued. Defendant's notice of appeal acknowledges that the present appeal is not timely but that his timely appeal had been filed and rejected due to confusion around whether the trial court had actually issued a decision. Around this time, defense counsel filed a motion to continue due to a family medical issue.

¶ 15. We conclude that we have jurisdiction to review the November 19 decision because defendant's second notice of appeal effectively sought to reopen his earlier appeal, which was timely. Casella Const., Inc. v. Dep't of Taxes, 2005 VT 18, ¶ 3, 178 Vt. 61, 869 A.2d 157 ("The timely filing of a notice of appeal is a jurisdictional requirement."); V.R.A.P. 4(c) (allowing litigants to reopen time to file appeal based on lack of notice); In re Mahar Conditional Use Permit, 2018 VT 20, ¶ 17, 206 Vt. 559, 183 A.3d 1136 (concluding notice of appeal was sufficient to be construed as motion to reopen appeal period); 16A C. Wright et al., Federal Practice & Procedure § 3950.6 (5th ed.) (asking courts to "be willing to construe liberally a would-be appellant's request to reopen appeal time" and positing that "a lack of formality in the request should not prove fatal so long as the request makes clear that the would-be appellant failed to receive notice of entry of judgment and seeks to reopen the appeal time").

## II. Legal Standard

¶ 16. Although "[w]e review the trial court's underlying bail determination for an abuse of discretion," we review "whether a due process violation has occurred de novo." LaBrecque I, 2020 VT 81, ¶ 18. The statute under which defendant is being held, 13 V.S.A. § 7553, reads, "A person charged with an offense punishable by life imprisonment when the evidence of guilt is great may be held without bail. If the evidence of guilt is not great, the person shall be bailable in accordance with section 7554 of this title." See also Vt. Const. ch. II, § 40(1). If the State meets these requirements, a "presumption arises in favor of incarceration and against release." State v. Rivera-Martinez, 2021 VT 96, ¶ 9, __ Vt. __, __ A.3d __ (mem.).

¶ 17. The defendant may overcome this presumption by "persuad[ing] the court to exercise its discretion to set bail or conditions of release," State v. Auclair, 2020 VT 26, ¶ 16, 211 Vt. 651, 229 A.3d 1019 (mem.), and "[a] trial judge has the discretion to allow bail even where, pursuant to 13 V.S.A. § 7553, a defendant is not entitled to it," State v. Falzo, 2009 VT 22, ¶ 6, 185 Vt. 616, 969 A.2d 694 (mem.). With regard to overcoming the presumption of

4

incarceration, we turn to the statutory considerations in imposing conditions of release under 13 V.S.A. § 7554(b). These include:

> [T]he nature and circumstances of the offense charged; the weight of the evidence against the accused; and the accused's family ties, employment, character and mental condition, length of residence in the community, record of convictions, and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings. Recent history of actual violence or threats of violence may be considered by the judicial officer as bearing on the character and mental condition of the accused.

13 V.S.A. § 7554(b)(2). Although the trial court has broad discretion, "[t]he Due Process Clause of the Fifth Amendment . . . limits a trial court's discretionary authority to hold a defendant prior to trial under § 7553 if pre[-]trial detention is either punitive or excessive." LaBrecque II, 2021 VT 58, ¶ 14.

¶ 18. In analyzing a potential due process violation arising from ongoing pre-trial detention, we turn to the factors set forth by the Second Circuit in Briggs, 697 F.3d 98. See LaBrecque I, 2020 VT 81 (applying Briggs factors); State v. Davis, No. 2021-123 (Vt. June 23, 2021) (mem.) (same). As a general rule, "[p]re[-]trial detention satisfies due process only if its purpose is regulatory rather than punitive." Briggs, 697 F.3d at 101. Permissible regulatory purposes include ensuring public safety and reducing defendant's flight risk. Id. There is no bright-line time limit for pre-trial detention after which a defendant's due process rights are automatically determined to have been violated; determining a possible due process violation requires a case-by-case assessment. Id. However, the length of detention is "obviously a central focus of our inquiry." Id. (quotation omitted). Therefore, when assessing whether pre-trial detention is a violation of a defendant's due process rights, we examine three factors: (1) "the strength of the evidence justifying detention," (2) "the government's responsibility for the delay in proceeding to trial," and (3) "the length of the detention itself." Id. The first factor "does not require a trial within a trial" but instead "calls on courts to analyze the strength of the evidence underlying the specific decision to detain defendant prior to trial," namely the flight risk and risk to public safety. LaBrecque I, 2020 VT 81, ¶ 19.

## III. Analysis

¶ 19. On appeal, defendant argues that the trial court erred in denying his motion to be released and placed on an electronic monitoring program.[*] Defendant asserts that the extensive delay of defendant's trial, and the availability of electronic monitoring, shifts the balance of the Briggs analysis in favor of release.

¶ 20. We first consider whether the court abused its discretion in denying release. As stated above, the trial court determined that defendant failed to meet his burden of proving that

---

[*] The parties were provided with the opportunity to brief their arguments but declined to do so. Our analysis is based on the arguments that counsel raised at oral argument before this Court on January 14, 2022.

5

the proposed electronic monitoring would ensure his appearance in court and protect public safety, and therefore denied his motion for bail review. The court noted that the monitoring system would provide information about defendant's location while the device was in place, but it would not prevent defendant from harming the public. Further, any intentional or unintentional disconnection (whether through tampering or through loss of GPS or cellular service) would prevent law enforcement from tracking defendant through the device. Defendant's failure to provide evidence about law-enforcement-response times meant that the court did not have sufficient information to assess law enforcement's ability to respond to a potential disconnection to protect the public and continue monitoring defendant. The court's decision to deny defendant's motion based on this reasoning was well within the court's discretion. See State v. Boyer, 2021 VT 19, ¶ 21, __ Vt. __, 252 A.3d 804 (mem.) (affirming denial of defendant's request for pre-trial release through home detention and affirming determination of no due process violation because defendant's proposed conditions of release would not "adequately assure public safety or mitigate the risk of flight").

¶ 21. We turn to whether defendant's ongoing pre-trial detention has deprived him of due process. We begin our due process analysis by addressing the first Briggs factor: the strength of the evidence justifying detention. Although we engage in the due process analysis de novo, the relevant facts have not changed. Defendant is accused of repeatedly sexually assaulting his teenaged stepdaughter over the course of two years, and the trial court found the weight of the evidence of his guilt to be great in its initial decision in November 2018, which defendant did not appeal. In a previous motion before the trial court, defendant conceded that the weight of the evidence of his guilt was great under 13 V.S.A. § 7553. However, the strength-of-the-evidence analysis under Briggs relates to the purposes of detention: the evidence of defendant's alleged risk to public safety and alleged flight risk. LaBrecque I, 2020 VT 81, ¶ 19 ("[T]his Briggs factor is not directed at the strength of the State's case-in-chief, and does not require a trial within a trial. Rather, it calls on courts to analyze the strength of the evidence underlying the specific decision to detain defendant prior to trial."). We therefore look to the § 7554(b) factors to assess defendant's flight risk and risk to public safety in light of defendant's proposal for electronic monitoring. Cf. Briggs, 697 F.3d at 101-02 (conducting similar analysis under federal counterpart to § 7554).

¶ 22. Defendant is a long-term member of the community, with strong familial ties and a regular history of employment. These factors ordinarily might suggest a low risk of flight. However, defendant's criminal history suggests otherwise. As the trial court found during its November 19, 2021, status conference, defendant's criminal history includes the following convictions: violation of conditions of release, failure to appear at court, violation of probation, simple assault on a law enforcement officer, and attempt to elude law enforcement. Defendant's specific criminal history displays "a disrespect for authority and conditions." LaBrecque II, 2021 VT 58, ¶ 10 (quotation omitted). These facts remain relevant to our flight-risk and public-safety analyses.

¶ 23. Defendant argues that the evidence in favor of pre-trial detention is mitigated by his proposal for electronic monitoring. The testimony indicates that, although the electronic monitoring would inform law enforcement if defendant were to leave his permitted areas or disconnect the device either intentionally or due to loss of GPS or cellular service, it would not ameliorate the risk defendant has to public safety, including the safety of his stepdaughter.

6

Defendant did not provide information about law-enforcement-response time in the area surrounding his proposed residence; consequently, we do not have evidence indicating that the speed with which law enforcement would respond would be sufficient to protect the public if defendant were to disconnect his device or leave his permitted area.

¶ 24. Additionally, while defendant's partner testified about her consent to have defendant live with her, she also testified that she continues to work at least fifty hours per week outside the home. She maintained a similar work schedule during the timeframe in which defendant is alleged to have sexually assaulted her daughter in the very residence where it is proposed he return. As a result of defendant's partner's work schedule, defendant will not have consistent supervision if he were to return to the residence. Although defendant's stepdaughter no longer resides with defendant's partner in this residence, her location is known to her family. The proposed residence is also close to a local middle school and high school, and defendant's partner noted that many of the children who live in her neighborhood go to the local high school. Defendant is charged with repeatedly sexually abusing a minor. A return to the residence would potentially enable him to access and harm other minors. Therefore, although the electronic-monitoring system may lessen the risk that defendant will fail to appear in court, it does nothing to ensure that defendant will not harm the public. The strength of the evidence justifying defendant's continued detention remains strong due to his risk to public safety.

¶ 25. The strength of the evidence is not dispositive, however. "The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." Briggs, 697 F.3d at 101. We therefore turn to the second Briggs factor: the government's responsibility for the delay in proceeding to trial. Unnecessarily prolonged pre-trial detention is a matter of great judicial concern and can give rise to a due process violation. See United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). As was established in Labrecque I, most of the delay prior to the pandemic-related suspension of jury trials is attributable to defendant's actions. For the purpose of a due process analysis, the State is responsible for the time delay resulting from the government's decision to suspend jury trials during the COVID-19 pandemic. However, the pandemic-related delay is not attributable to intentional governmental interference; the government's legitimate efforts to protect public health and encourage public safety are not malicious or targeted towards defendant.

¶ 26. Defendant has failed to demonstrate that these facts have changed since our 2020 decision in this case, in which "we conclude[d] that although a portion of the delay is attributable to the government, as in Briggs, the delay was neither intentional nor unwarranted, and defendant, too, bears some responsibility. As a result, this fact[or] also weighs against finding a due process violation." LeBrecque I, 2020 VT 81, ¶ 28 (quotation omitted); see also United States v. Torres, 995 F.3d 695, 708-09 (9th Cir. 2021) (holding that defendant's twenty-one-month pre-trial detention was not due process violation because continuances were stipulated or direct result of COVID-19 pandemic); United States v. Nero, 854 F. App'x 14, 18 (6th Cir. 2021) (mem.) (finding no due process violation because early portion of delay for defendant's jury trial was "attributable to stipulated extensions and the more recent postponements [were] due to a global pandemic."). We therefore again hold that the government is not primarily responsible for defendant's prolonged pre-trial detention and, to the extent that it is responsible,

7

the prolongment does not amount to a due process violation because there was no showing of intentional or unwarranted interference.

¶ 27.  We continue with the third <u>Briggs</u> factor: the length of the detention.  As described above, there is no constitutional bright-line limit on the duration of pre-trial detention. 697 F.3d at 103.  In the present case, defendant has been incarcerated without bail since November 2018, marking thirty-eight months in which defendant has been detained without trial. This is undeniably an extraordinarily long time for a defendant to be incarcerated without a sentence, and is cause for concern.  However, "the length of detention alone is not dispositive and will rarely by itself offend due process."  <u>United States v. El-Hage</u>, 213 F.3d 74, 76, 79 (2d Cir. 2000) (finding no due process violation from defendants' "extraordinary" thirty-to-thirty-three-month pre-trial detention because of specific alleged crimes and lack of government responsibility for delay).  Here, defendant's prolonged incarceration is the only factor that weighs in defendant's favor.  The evidence justifying defendant's continued incarceration is strong, and about half of the delay was due to the COVID-19 pandemic, making this a highly unusual situation when compared to prolonged pre-trial detention outside of the context of a global pandemic.  Further, defendant is currently on the trial list for early February now that jury trials have resumed.  Defendant's jury selection would have been in progress at the time of the hearing in this appeal, and his trial would be well underway at the time of this entry order, had defense counsel not filed a motion to continue in early January due to a familial medical issue.

## IV.  Conclusion

¶ 28.  The balance of the three <u>Briggs</u> factors leads us to conclude that defendant's continued pre-trial detention does not offend due process.  Although the proposed electronic-monitoring system would indeed mitigate defendant's flight risk, it would not lessen defendant's risk to public safety.  The monitoring system therefore does not have a significant impact on the strength of the evidence justifying continuing defendant's detention under our <u>Briggs</u> analysis. Further, in light of the government's lack of responsibility for the delay in proceeding to trial, even defendant's undeniably lengthy detention does not amount to a due process violation. Because defendant has not proved that the State has violated his due process rights by continuing to detain him prior to trial, we affirm the trial court's decision.

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice

8