# ENTRY ORDER

2022 VT 20

SUPREME COURT DOCKET NO. 22-AP-093

APRIL TERM, 2022

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Windsor Unit, |
| | } | Criminal Division |
| | } | |
| Larry L. Labrecque | } | Case No. 689-7-18 Wrcr |

Trial Judge:  John R. Treadwell

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant appeals the criminal division's orders denying bail on March 1, 2022, denying home detention on March 21, 2022, and denying bail review on March 25, 2022.  We affirm each of the criminal division's orders.

¶ 2.     Defendant is charged with three felonies: repeated aggravated sexual assault of a child under 13 V.S.A. § 3253a(a)(8), repeated aggravated sexual assault under id. § 3253(a)(9), and sexual assault of a victim under the age of eighteen who is entrusted to the actor's care under id. § 3252(d).  Each charge carries a maximum sentence of life imprisonment.  See id. § 3253a(b); id. § 3253(b); id. § 3252(g).

## I.  Procedural History

¶ 3.     Defendant has sought to be released on conditions numerous times since he was initially held without bail in November 2018 following the criminal division's weight-of-the-evidence hearing.  He most recently appealed the criminal division's denial of bail to this Court in January 2022 in State v. Labrecque (LaBrecque III), 2022 VT 6, __ Vt. __, __ A.3d __ (mem.), having previously appealed the criminal division's denial of bail in July 2021 in State v. Labrecque (LaBrecque II), 2021 VT 58, __ Vt. __, 261 A.3d 632 (mem.) and August 2020 in State v. Labrecque (LaBrecque I), 2020 VT 81, __ Vt. __, 249 A.3d 671 (mem.).  We summarized the lengthy procedural history of this case in LaBrecque III and need not repeat the prior adjudication of this issue here.  See 2022 VT 6, ¶¶ 3-9.  Instead, we commence the procedural history starting from the last time defendant was before us in January 2022.

¶ 4.     When we issued LaBrecque III in January, jury draw and trial were scheduled in defendant's underlying criminal case for early February.  However, during the first scheduled day of trial, a necessary State witness had symptoms of illness that, considering Administrative Directive PG-13 related to COVID-19 safety protocols in Vermont courthouses, prevented her

from testifying in person. Defendant did not waive his Confrontation Clause right to allow the witness to testify remotely, so the court continued the trial. The criminal division was unwilling to reschedule the trial for jury draw with the same panel, which the parties acknowledged would be problematic, and the panel would complete its service after March 2022. There were a limited number of trial days scheduled for the Windsor Criminal Division in April, so the trial was rescheduled for May 2022.

¶ 5. Defendant renewed his request for release on bail or conditions, and the criminal division held a hearing on the issue on February 8, 2022, the same day that trial was continued. During this hearing, defendant presented testimony from the president of Easter Bail Bond Agency, Inc., who also testified at a previous hearing on home monitoring in November 2021. The testimony from February 8 established there were no changes in circumstances since his November testimony, which we previously considered in LaBrecque III, 2022 VT 6, ¶¶ 7, 20, 23.

¶ 6. In its March 1, 2022 order, the criminal division found insufficient factual grounds for defendant's request to reconsider the order holding him without bail. The criminal division systematically considered various statutory provisions, determining that none provided an avenue for defendant to seek reconsideration. It found that: review of monetary bail under 13 V.S.A. § 7554 does not apply to individuals held without bail pursuant to id. §§ 7553 and 7553a; imposition of the least restrictive conditions of release when a criminal trial is continued under id. § 7557 also does not apply to individuals held without bail pursuant to id. §§ 7553 and 7553a; and "[t]here is no statute expressly providing for trial court reconsideration or review of a prior decision to hold a defendant without bail pursuant to 13 V.S.A. §§ 7553 or 7553a."

¶ 7. However, the criminal division acknowledged case law in which we have held that a defendant may seek review of an order holding them without bail pursuant to 13 V.S.A. § 7553a if they "present[] an adequate basis for review, [though] there are limits to the bases on which a court can conduct such a review." State v. White, 2020 VT 62, ¶ 12, 212 Vt. 658, 237 A.3d 1235 (mem.). The criminal division noted that while this Court has not directly addressed this issue when, as here, a defendant is held pursuant to 13 V.S.A. § 7553, there appeared to be no reason why a defendant held under § 7553 would not be entitled to review after providing an adequate factual basis for such review. See State v. Tarbell, 2021 VT 68, ¶ 14, __ Vt. __, 261 A.3d 1123 (mem.) (affirming trial court's denial of defendant's motion to review hold-without-bail decision where defendant was held under 13 V.S.A. § 7553 and failed to persuade court to release him on conditions but clarifying "that nothing said here should be construed to alter defendant's existing rights to seek a review of the hold-without-bail decision in the future, including a motion based on a proposed set of conditions supported by evidence that was not introduced at the reconsideration hearing").

¶ 8. The criminal division could not find an articulated standard for reconsideration of § 7553 bail decisions, but it reasoned, "[i]t cannot be that review or reconsideration must be permitted without some showing of a change in circumstances. The alternative would be substitute reconsideration for appellate review—in effect providing for horizontal appeal in the trial courts." As a result, the court concluded that, for a defendant to justify reconsideration of a prior order, the defendant "must present new relevant facts or evidence or establish a basis for concluding that there has been a substantial change in circumstances sufficient to warrant reconsideration."

¶ 9.    Alternatively, the court noted that defendant's motion could be considered a motion to reconsider or revise an interlocutory order, in which case the court would need to consider the three factors from United States v. Loera, 182 F. Supp. 3d 1173 (D. N.M. 2016).  These factors involve considering: (1) "how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges;" (2) "the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties may produce . . . to assess the degree of reasonable reliance the opposing has placed in the [c]ourt's prior ruling;" and (3) whether the movant has presented new controlling authority, new evidence, or a clear indication of judicial error.  Id. at 1206-07.

¶ 10.    Ultimately, the criminal division determined that defendant did not identify any facts or circumstances that changed since the court last denied his request for release in November 2021; this indicated, under either the standard it articulated above or the Loera standard, that defendant failed to establish sufficient grounds for bail reconsideration.

¶ 11.    Having found that defendant did not have sufficient grounds for bail reconsideration, the criminal division then assessed whether continued pre-trial detention would nevertheless violate defendant's substantive due process rights, ultimately concluding that it would not.  In assessing defendant's due process rights, the court applied the three factors from United States v. Briggs, as we did in each of defendant's three previous appeals.  697 F.3d 98, 101 (2d Cir. 2012); see LaBrecque I, 2020 VT 81, ¶ 17; LaBrecque II, 2021 VT 58, ¶ 20; LaBrecque III, 2022 VT 6, ¶ 18.  The criminal division acknowledged that this Court had engaged in a Briggs analysis in LaBrecque III fewer than six weeks prior, and that the continuance of the trial was the only change in circumstances since then.  The criminal division further noted that both it and this Court "had previously identified the deficiencies and shortcomings of defendant's proposal," but that he had failed to present testimony or evidence to address these concerns.

¶ 12.    As to the first Briggs factor, the court found that the evidence of defendant's alleged risk to public safety and alleged risk of flight was great because of the seriousness of the charge, the significant weight of evidence of the alleged crime, and defendant's criminal history indicating disrespect for conditions of release and authority.  Further, the court found uncompelling defendant's argument that the risk of flight and risk to public safety could be mitigated by electronic monitoring, citing, among other things, our previous concerns about defendant's failure to provide information regarding law enforcement response time.  See LaBrecque III, 2020 VT 6, ¶ 23.

¶ 13.    Regarding the second factor, the criminal division found that the delay attributable to the State did not constitute a due process violation.  It acknowledged our determination in LaBrecque III that the pre-pandemic delay in this case was primarily attributable to defendant.  2022 VT 6, ¶¶ 25-26.  Concerning the trial continuance due to witness availability, the criminal division cited a United States Supreme Court decision noting that "a valid reason, such as a missing witness, should serve to justify appropriate delay."  Barker v. Wingo, 407 U.S. 514, 531 (1972) (emphasis added).  Even assuming the State was responsible for delay due to witness unavailability, it was not intentional or imposed for unwarranted purposes.

¶ 14.    The criminal division concluded that the third and final factor, the length of the detention itself, weighed in defendant's favor.  However, it noted that "the length of detention

3

alone is not dispositive and will rarely by itself offend due process." United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000) (quotation omitted); LaBrecque III, 2022 VT 6, ¶ 27. Ultimately, the court found that the balance of the three factors weighed in favor of continued detention for the legitimate regulatory purpose of protecting the public.

¶ 15. Defendant subsequently filed an application for home detention on March 9, 2022. The criminal division denied the motion as a matter of law on March 13, 2022, citing the statute providing that "[a] defendant held without bail pursuant to section 7553 or 7553a . . . shall not be eligible for release to the Home Detention Program on or after June 1, 2018." 13 V.S.A. § 7554b(b). The criminal division noted that defendant would remain ineligible for release to home detention as long as there was an active order holding him without bail.

¶ 16. On March 24, 2022, defendant filed a motion for bail review asking the criminal division to release him on cash bail so that the court could consider his application for home detention. The criminal division denied his motion on March 25, 2022, noting its prior decisions on March 1 and 13 and finding that "[d]efendant has neither presented new relevant facts nor evidence nor established a basis for concluding that there has been a substantial change in circumstances sufficient to warrant consideration of the March 1, 2022, Entry Order."

¶ 17. Defendant appeals each of the above orders.

## II. Legal Standard

¶ 18. As stated in LaBrecque III, "[a]lthough we review the trial court's underlying bail determination for an abuse of discretion, we review whether a due process violation has occurred de novo." 2022 VT 6, ¶ 16 (quotations omitted). There is a presumption in favor of incarceration when a defendant is held pursuant to 13 V.S.A. § 7553, which a defendant may overcome by "persuading the court to exercise its discretion to set bail or conditions of release." LaBrecque III, 2022 VT 6, ¶ 17 (quotation omitted). A trial court may consider the statutory factors listed in 13 V.S.A. § 7554(b), which include:

> [T]he nature and circumstances of the offense charged; the weight of the evidence against the accused; and the accused's family ties, employment, character and mental condition, length of residence in the community, record of convictions, and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings. Recent history of actual violence or threats of violence may be considered by the judicial officer as bearing on the character and mental condition of the accused.

Id. § 7554(b)(2). Despite the trial court's broad discretion, the defendant's substantive due process rights "limit[] a trial court's discretionary authority to hold a defendant prior to trial under § 7553 if pre-trial detention is either punitive or excessive." LaBrecque III, 2022 VT 6, ¶ 17 (quotation omitted).

¶ 19. When an ongoing pre-trial detention calls into question a defendant's due process rights, we consider the three Briggs factors to determine whether the pre-trial detention is regulatory or punitive in its purpose, i.e., :

the strength of the evidence justifying detention, the government's responsibility for the delay in proceeding to trial, and the length of the detention itself. The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence must be if it is to be deemed sufficient to justify the detention's continuance.

Briggs, 697 F.3d at 101.

### III. Analysis

¶ 20.    On appeal, defendant argues that the criminal division erred in concluding that 13 V.S.A. § 7557 is inapplicable here, the criminal division's decision on the home detention application was inconsistent with a prior discussion on the record to defendant's detriment, and the criminal division abused its discretion in finding that the Briggs factors do not weigh in favor of release. We address each of these arguments in turn.

### A.  Applicability of 13 V.S.A. § 7557

¶ 21.    Defendant first argues that § 7557, the statute governing bail upon postponement of trial, should apply to him. The statute reads in its entirety:

When a District or Superior court postpones the trial of a criminal case or the examination of a person charged with a criminal offense, the court may impose the least restrictive conditions or combination of conditions permitted under subdivision 7554(a)(1) of this title which will reasonably assure the person's appearance before the court on the day to which the trial or examination is postponed.

13 V.S.A. § 7557. Defendant argues that the word "may" as it appears above is permissive but that the statute applies to all individuals whose criminal trials are continued by the superior court. He concludes that the criminal division was required to consider whether he was entitled to bail. We are unpersuaded by this argument.

¶ 22.    "In construing a statute, our paramount goal is to discern and implement the intent of the legislature." Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273, 882 A.2d 1196. "If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language." Flint v. Dep't of Labor, 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080. The use of the word "may" in § 7557 indicates that the criminal division is not required to, but may at its discretion, consider and impose conditions of release upon the continuance of a criminal trial to ensure the defendant's appearance in court. See New England Phoenix Co. v. Grand Isle Veterinary Hosp., Inc., 2022 VT 10, ¶ 18, __ Vt. __, __ A.3d __ ("We generally give the word 'may' its plain, ordinary meaning, which connotes discretion."). Therefore, the criminal division was not required to make such a consideration. Because we hold that "may" connotes discretion, we need not address defendant's argument that § 7557 applies to him as a defendant held without bail pursuant to § 7553.

¶ 23. Further, this is not a situation in which the criminal division refused to consider defendant's request to be released on conditions without considering the merits. In its March 1, 2022, order, the criminal division acknowledged defendant's request for reconsideration, ultimately finding that defendant failed to provide a sufficient basis for his request because he did not identify new or changed facts or circumstances under either of the court's proposed standards of analysis. The criminal division further engaged in an in-depth assessment of defendant's due process claims and concluded that, under the Briggs factors, continued pre-trial detention did not violate defendant's substantive due process rights. It is therefore unclear what relief defendant seeks by making this claim, since defendant offers no factual or legal assertions regarding the criminal division's conclusions about the insufficient basis for his reconsideration request.

B. Prior Conversations on the Record Regarding Home Detention

¶ 24. Defendant argues that the criminal division should have considered his motion for home detention because, had he been advised that he only had one chance to apply, he would have either applied during the hearing on February 8 or appealed the March 1 order directly instead of applying for home detention later in March. Alternatively, he argues that his reliance on his conversations with the court should be considered good cause for the delay in filing the appeal before us now.

¶ 25. Defendant does not point us to any specific language or interactions in the transcripts to support his argument and, although defendant submitted three transcripts for this appeal, we do not find any conversations on the record between defendant, or defense counsel, and the court regarding home detention. To the extent that defendant relies on conversations not a part of the record before us, we find no evidence of harm and again point to the criminal division's thorough due process analysis in its March 1 order. Had defendant directly appealed the March 1 order or applied for home detention earlier, the parties would be exactly where they are now. Further, in response to defendant's alternative argument, we note that defendant's delay in filing the appeal is not a factor in our analysis.

C. Due Process Analysis

¶ 26. Defendant next argues that the three Briggs factors require his release on home detention. With regard to the first factor, the strength of the evidence justifying detention, defendant asserts that the passage of time since his criminal history along with his strong ties to the community and consistent employment prior to his incarceration, should negate the specifics of his criminal history. He further argues under the second factor that the government, though its actions were not malicious, must bear full responsibility for the bulk of the delay. As to the third factor, defendant cites a series of pre-COVID-19 pandemic cases to argue that his detention of over forty months violates his right to due process.

¶ 27. The evidence related to the first factor has not changed since LaBrecque III, in which we considered all the same facts as before us now and the same proposal for home detention. See 2022 VT 6, ¶¶ 21-24 (concluding electronic monitoring might reduce flight risk but would not protect public safety because "[d]efendant's specific criminal history displays a disrespect for authority and conditions," public would not be safe if defendant were to disconnect device or leave area, defendant's partner would not provide sufficient supervision, and proposed residence has

6

access to minors (quotation omitted)). Despite having ample notice of our above reservations, defendant has not introduced new evidence about law-enforcement response time, proposed additional supervision or conditions to ameliorate our concerns about his location, or provided any other information about how his proposed home detention would adequately protect public safety. Defendant states conclusorily that the combination of the length of detention and the added security of his electronic monitoring proposal substantially outweigh our concerns regarding his flight risk and risk to public safety. And yet defendant has not in the last three months bolstered his arguments about safety that we already rejected as insufficient. We therefore again conclude that the first factor weighs against finding a due process violation.

¶ 28. However, our analysis does not end with the first factor, and we must now turn to the second factor, the government's responsibility for the delay. "The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." Briggs, 697 F.3d at 101; accord LaBrecque III, 2022 VT 6, ¶ 25. We previously established in LaBrecque I and again confirmed in LaBrecque III that "most of the delay prior to the pandemic-related suspension of jury trials is attributable to defendant's actions." LaBrecque III, 2022 VT 6, ¶ 25. Further, although "the State is responsible for the time delay resulting from the government's decision to suspend jury trials during the COVID-19 pandemic[,] . . . the pandemic-related delay is not attributable to intentional governmental interference" because "the government's legitimate efforts to protect public health and encourage public safety are not malicious or targeted towards defendant." Id.

¶ 29. We previously concluded that this second factor weighed against a due process violation. However, since we decided LaBrecque III, the trial, which at the time was scheduled for early February, was continued to May because a critical State witness was exhibiting symptoms of illness that, pursuant to Administrative Directive PG-13, would prevent her from entering the court building to testify. Here, as with the prior suspension of jury trials, the delay is attributable to the government for purposes of a due process analysis but is not related to intentional, malicious, or targeted interference with defendant's due process rights. Further, a continuance based on witness illness is codified in Vermont Rule of Criminal Procedure 50(c)(3): "A party shall not be entitled to a continuance on the ground of the absence of a material witness whom it is in the power of such party to summon, except when such witness is sick or otherwise disabled from attending court . . . ." Although we have not before considered whether witness illness is attributable under a due process analysis to the party who called the witness, it stands to reason that this justifiable delay is akin to the pandemic-related delay in that it was not intentional, malicious, or targeted. This factor therefore weighs against finding a due process violation.

¶ 30. The final factor weighs in defendant's favor. Defendant has been incarcerated since the criminal division's weight-of-the-evidence hearing in November 2018, marking a pre-trial detention of over forty months. This is undoubtedly at the limit of what is acceptable. However, as we noted in LaBrecque III, " 'the length of detention alone is not dispositive and will rarely by itself offend due process.' " 2022 VT 6, ¶ 27 (quoting El-Hage, 213 F.3d at 76, 79 (finding no due process violation from defendants' "extraordinary" thirty-to-thirty-three-month pre-trial detention because of specific alleged crimes and lack of government responsibility for delay). Further, defendant fails to cite to any cases commenced during the COVID-19 pandemic in which a court has found that the length of pre-trial detention justifies release and imposition of bail on due

process grounds. Although we are not restricted from finding a due process violation merely because no other court has found one under similar circumstances, the lack of support for defendant's position indicates that we are also not compelled to find one here.

¶ 31. As in LaBrecque III, "defendant's prolonged incarceration is the only factor that weighs in defendant's favor." Id. The evidence justifying defendant's continued pre-trial detention remains strong, and the State's blame for the pandemic-related suspension of jury trials and the continuance from February to May are due to neutral factors unrelated to this case. However, a delay in trying the underlying case beyond May 2022 that is not attributable to defendant would be of grave concern to this Court.

IV. Conclusion

¶ 32. In sum, defendant's reliance on § 7557 is unpersuasive. We again conclude under our de novo review of the Briggs factors that defendant's continued pre-trial detention does not violate his right to due process. He has introduced no new evidence to change our prior analysis under the first factor, and the trial's continuance from February to May is the only changed circumstance under the second and third factors. Because that delay was justified and defendant has not otherwise proven that continued detention violates his due process rights, we affirm the criminal division's decisions.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
William D. Cohen, Associate Justice