# ENTRY ORDER

## 2021 VT 47

## SUPREME COURT DOCKET NO. 2021-113

## JUNE TERM, 2021

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Franklin Unit, |
| | } | Criminal Division |
| | } | |
| Daniel Blodgett | } | DOCKET NO. 21-CR-01872 |

Trial Judge: Michael S. Kupersmith (Ret.)

In the above-entitled cause, the Clerk will enter:

¶ 1.    Defendant Daniel Blodgett is charged with sexual assault under 13 V.S.A. § 3252(a)(1). The trial court ordered him held without bail pending trial, as is permissible under 13 V.S.A. § 7553 where a defendant is charged with an offense punishable by life imprisonment and the evidence of guilt is great. Defendant appeals the order denying his release. 13 V.S.A. § 7556(b).

## I. Factual & Procedural Background

¶ 2.    The relevant factual and procedural history is as follows. Defendant was initially held without bail at his arraignment on March 17, 2021. At a weight-of-the-evidence hearing on April 29, the court heard testimony from the alleged victim of the charged sexual assault, A.Q.; defendant's probation officer; and defendant's mother.

¶ 3.    A.Q. testified as follows. She and defendant were previously in a relationship, and the two have a child together. Following their breakup, when defendant was "between girlfriends," he expected A.Q. to allow him to stay over at her home, and she did. Around March 7, 2018, defendant arrived at A.Q.'s home with a twelve-pack of beer and a pint of tequila; he appeared to be under the influence of alcohol. After A.Q. allowed defendant to enter, he began drinking.

¶ 4.    At some point, the two entered A.Q.'s bedroom and began to have consensual sex. A.Q. explained that "it grew violent pretty quickly, as it often did when [defendant] was drinking," noting that when defendant was intoxicated, he "liked to inflict pain during sex." Defendant placed his fingers inside A.Q.'s vagina and anus, grabbing her and then pulling and throwing her body around. A.Q. did not consent to these acts, repeatedly asking him to stop. Instead of stopping, defendant "tried to forcefully initiate anal sex." At no time had A.Q. consented to have anal sex. When A.Q. pushed defendant away and informed him that she had no interest in continuing the encounter, he took a lit cigarette and burnt her groin with it in an area very close to her anus. He then threw her sideways off her bed. A.Q. told defendant she was "done," and was going to sleep on her couch. At this point, defendant threw a nearly full can of beer at A.Q.'s face. She left her bedroom and laid down on the couch.

¶ 5.    Defendant followed A.Q. and informed her that she was to return to the bedroom, even if she was not going to continue the sexual encounter. She did so, and defendant "passed out fairly quickly." However, their six-year-old daughter had been awakened by the noise. A.Q. went to their daughter's room to comfort her and fell asleep in the daughter's bed.

¶ 6.    Later that night, defendant woke up and realized that A.Q. was no longer in bed with him. He entered their daughter's room to retrieve A.Q., telling her to "get the fuck out of [their daughter's] bed and go back to the bedroom." A.Q. refused, telling defendant that she was going to remain with their daughter. Defendant responded by grabbing A.Q. by her hair, wrapping it around his hands, and using it to drag her backward down the hall.

¶ 7.    Upon seeing this, their daughter began "screaming hysterically" and attempting to follow her mother into the bedroom. Defendant told A.Q. to stay in her bedroom, instructing her that she was not to go console their daughter. He took their daughter, still crying and screaming, and placed her back in her bed, telling her that she needed to go back to sleep and "had better not get the fuck out of her bed."

¶ 8.    Defendant then returned to A.Q.'s bedroom and either fell asleep or passed out. The next day, he claimed to have no memory of his actions the night before.

¶ 9.    Defendant's probation officer testified that defendant had been under her supervision beginning in September of 2020 in connection with a conviction for prohibited conduct. The case arose from an incident in which defendant was drinking at the home of a woman with whom he regularly had intercourse. The woman's roommate had a young daughter. Defendant, intoxicated, went into the girl's bedroom, got into bed with her, and tried to pull her pants down. As a result, defendant was charged with lewd and lascivious conduct with a child, but pleaded guilty to prohibited conduct pursuant to an agreement with the State.

¶ 10.   As a condition of his probation for the prohibited-conduct conviction, defendant was required to undergo a psychosexual evaluation and comply with any resulting recommendations. The evaluation resulted in a recommendation that he make an appointment with the Howard Center; he did so, but the appointment was cancelled "because of a Zoom issue." The probation officer did not know whether the technical issue was attributable to defendant or to the Howard Center.

¶ 11.   In February of 2021, defendant was charged with sexual assault by using a drug to impair. He was released on conditions following his arraignment, including $15,000 bail with a $1500 cash deposit and a twenty-four-hour curfew at his mother's home with limited exceptions, including going to work. He was also ordered not to purchase, possess, or consume alcohol.

¶ 12.   On March 1, 2021, defendant was charged with violation of his conditions of probation in the prohibited-conduct case. Defendant's probation officer placed him on GPS monitoring as a condition of his release on the pending probation violation. In response to inquiry from the court, she explained that while a GPS unit reports a person's location in real time, the probation office only monitors it during work hours. The unit can be removed using wire cutters.

¶ 13.   The probation officer remained in contact with defendant until he was incarcerated in connection with the instant sexual-assault charge. Aside from failing to charge his GPS unit on the first day he had it—an omission which did not reoccur after he was informed that he needed to charge the unit daily—the probation officer was not aware that he violated any other conditions of release during this time.

2

¶ 14.    Finally, defendant's mother testified that defendant resided with her between his February 10, 2021 arraignment for sexual assault and his March 17, 2021 arraignment on the instant sexual-assault charge.  Defendant's uncle, who has developmental issues, also lives in the home.  Defendant's mother testified that during this time, defendant was working for UPS, but has since lost that job due to his incarceration.

¶ 15.    Defendant's mother indicated that if the court released defendant on conditions, he could come live with her, and that she would be willing to review his conditions of release and report to law enforcement should he violate them.  She agreed that defendant has an "alcohol issue," and indicated she would let law enforcement know if he was drinking in violation of his conditions of release.

¶ 16.    On the basis of this evidence, the court concluded that the evidence of defendant's guilt was great and declined to exercise its discretion to release defendant.  Defendant appeals.

## II. Analysis

¶ 17.    Defendant raises three challenges to the order holding him without bail.  First, he contends that the trial court erred in determining that the evidence of his guilt was great.  Second, he argues that the court failed to appropriately consider the factors at 13 V.S.A. § 7554(b) when it declined to release him.  Finally, defendant posits that, in the context of the emergency order suspending jury trials due to the COVID-19 pandemic, his rights under Articles 10 and 12 of the Vermont Constitution and the Sixth Amendment of the United States Constitution are abridged because he will not be tried within ninety days of his arraignment.  We consider each of these arguments in turn.

¶ 18.    A person charged with an offense punishable by life imprisonment may be held without bail prior to trial when the evidence of guilt is great.  Vt. Const. ch. II, § 40(1); 13 V.S.A. § 7553.  Here, defendant is charged with sexual assault under 13 V.S.A. § 3252(a)(1); if convicted, he would face a maximum sentence of life imprisonment.  13 V.S.A. § 3271(b).  Courts determine whether the evidence of guilt is great by considering whether substantial, admissible evidence of guilt, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably convince a factfinder beyond a reasonable doubt that defendant is guilty of the charged offense.  State v. Hardy, 2008 VT 119, ¶ 10, 184 Vt. 618, 965 A.2d 478 (mem.); State v. Duff, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989).  In reviewing the court's ruling on this point, we consider the record below, but "independently determine[] whether the standard has been met." State v. Orost, 2017 VT 110, ¶ 5, 206 Vt. 657, 179 A.3d 763 (mem.); State v. Ford, 2015 VT 127, ¶¶ 8, 200 Vt. 650, 130 A.3d 862 (mem.).

¶ 19.    To obtain a conviction for sexual assault under § 3252(a)(1), the State must show that defendant intentionally engaged in a sexual act with another person and compelled the other person to participate in the act without consent.  "Sexual act" is defined as "conduct between persons consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." 13 V.S.A. § 3251(1).  " 'Consent' means words or actions by a person indicating a voluntary agreement to engage in a sexual act." Id. § 3251(3).

¶ 20.    Defendant argues that the court erred in finding that the evidence of his guilt was great because A.Q. testified that: the encounter was initially consensual; defendant "tried" to place his penis in her anus, not that he in fact did so; and she pushed him away and told him she was not

3

interested in continuing thereafter. He also argues that because the only evidence of his mental state was A.Q.'s testimony that, the next day, he denied being able to recall the events of the previous night, the court erred in concluding that he acted intentionally. We find no merit in any of these contentions.

¶ 21. A.Q.'s testimony on the issue of consent could not have been clearer. Taken in the light most favorable to the State, it amply supports the court's conclusion. Although the sexual encounter was initially consensual, once defendant became violent, A.Q. began asking defendant "to stop." However, following her repeated indications that she had withdrawn her consent, defendant nonetheless "tried to forcefully initiate anal sex." Sexual assault under § 3252(a)(1) requires "any intrusion, however slight, by any part of a person's body . . . into the genital or anal opening of another." 13 V.S.A. § 3251(1). Considered in the light most favorable to the State, the complaining witness's statement that defendant attempted to "forcefully initiate anal sex" is sufficient to support a factfinder's reasonable conclusion that there was, at minimum, an intrusion of some degree into A.Q.'s anal opening. Moreover, as the trial court observed in its oral findings, the offense as charged could have been completed not only by that act, but also by defendant's acts in placing his hands into A.Q.'s vagina and anus and grabbing and pulling her body around. The witness also explicitly testified that she did not consent to either of those acts.

¶ 22. Finally, we reject any suggestion that A.Q.'s testimony was insufficient to establish that defendant acted intentionally under the applicable standard. Even at trial, "[i]ntent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." State v. Cole, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988). Taken in the light most favorable to the State, A.Q.'s testimony is sufficient to support a jury's reasonable conclusion that defendant acted with intent. For all of these reasons, the trial court did not err in holding that the evidence of defendant's guilt was great as to the charged sexual assault.

¶ 23. Defendant also argues that the trial court abused its discretion in declining to release him. There is no constitutional right to bail for offenses punishable by life imprisonment where the evidence of a defendant's guilt is great. Vt. Const. ch. II, § 40. "[W]here the constitutional right [to bail] does not apply, the presumption is switched so that the norm is incarceration and not release." State v. Blackmer, 160 Vt. 451, 458, 631 A.2d 1134, 1139 (1993). However, the trial court retains "the discretion to allow bail even where, pursuant to 13 V.S.A. § 7553, a defendant is not entitled to it." State v. Falzo, 2009 VT 22, ¶ 6, 185 Vt. 616, 969 A.2d 694 (mem.). The court's discretion in this area is "extremely broad," provided defendant is afforded an opportunity to be heard on the issue. Hardy, 2008 VT 119, ¶ 10 (quotation omitted). "In exercising its discretion to release a defendant, the trial court may look to the factors listed in § 7554 . . . ." Ford, 2015 VT 127, ¶ 10. We review a trial court's decision in this regard narrowly, for an abuse of that discretion. State v. Lafayette, 2021 VT 38, ¶ 10, __ Vt. __, __ A.3d __ (mem.); see also State v. Falzo, 2009 VT 97, ¶ 4, 186 Vt. 596, 981 A.2d 424 (mem.) (noting that court's review of such an order "is strictly limited").

¶ 24. Defendant contends that the trial court did not consider the § 7554(b) factors in making the decision not to grant him discretionary release. Those factors include:

> the nature and circumstances of the offense charged; the weight of the evidence against the accused; the accused's employment; financial resources, including the accused's ability to post bail; the accused's character and mental condition; the accused's length of residence in the community; and the accused's record of appearance

4

at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

13 V.S.A. § 7554(b)(1). The court may also consider "[r]ecent history of actual violence or threats of violence . . . as bearing on the character and mental condition of the accused." Id. § 7554(b)(2).

¶ 25. Defendant argues that this case is analogous to State v. Passino and State v. Memoli, two cases in which we held that the trial court's decision did not provide adequate indication that it exercised its discretion to consider releasing a defendant with no constitutional right to bail under § 7553. See State v. Memoli, 2008 VT 85, ¶ 4, 184 Vt. 564, 956 A.2d 575 (mem.); State v. Passino, 154 Vt. 377, 379, 577 A.2d 281, 283 (1990). We disagree. In Memoli, the trial court held that because the evidence of guilt was great, the defendant's proffered evidence concerning conditions of release was irrelevant and did not consider it. 2008 VT 85, ¶ 4. We remanded, explaining that even where the evidence of guilt is great, the court must go on to "consider evidence relevant to whether defendant should be held without bail or released on conditions, and must exercise its discretion in determining whether release with conditions is appropriate." Id. ¶ 5. In Passino, we remanded because there was "no indication that the trial court exercised its discretion to consider bail despite its finding that the evidence against defendant was great." 154 Vt. at 379, 577 A.2d at 283. Those cases both involved a total lack of consideration of any factor potentially bearing on defendant's release.

¶ 26. In contrast, here, the court set forth numerous factors bearing on its decision not to exercise its discretion to grant defendant release. It first noted that at the time defendant was charged, he was on probation for "another sex-related crime." It also observed that defendant is charged with sexual assault in a separate case, and therefore now faces two charges carrying a maximum penalty of life imprisonment, enhancing the risk of flight to avoid prosecution. Further, the court noted that A.Q. testified to an offense committed against her "with extreme cruelty, approaching sadism." Should defendant be convicted, the court reasoned, the egregious circumstances of the offense would be aggravating factors at his sentencing. The court also found that the details of A.Q.'s report demonstrated that defendant "has little impulse control." Finally, although defendant apparently abided by conditions of release issued in connection with the first sexual-assault charge, those conditions were in place for only five weeks before defendant was incarcerated in connection with the instant sexual-assault charge. The court had "little confidence" that defendant was capable of abiding by conditions of release over a longer period of time.

¶ 27. Although the court could have been more explicit in connecting its findings to the § 7554(b) factors, we have never required that the court recite each of those factors in the exercise of its broad discretion to release a defendant to whom no presumption in favor of release applies. State v. Auclair, 2020 VT 26, ¶ 21, __ Vt. __, 229 A.3d 1019 (mem.) (explaining that "[a]lthough it may be best practice to do so," court exercising its discretion under § 7553 is "not required to explicitly consider each of [the § 7554(b)] factors"); State v. Henault, 2017 VT 19, ¶ 8, 204 Vt. 628, 167 A.3d 892 (mem.) (explaining that under § 7553 "a trial court may look at the § 7554(b) factors when deciding whether to grant a defendant bail," but "the language of § 7554(b) that requires consideration of each factor in determining conditions of release is not applicable"); Ford, 2015 VT 127, ¶ 11 ("[U]nder § 7553 the presumption is against release and there is no requirement that a court consider all of the factors listed in § 7554 when exercising its discretion."). Though the court did not explicitly tie its analysis to each of the § 7554(b) factors, it clearly considered those factors and provided ample support for its decision not to release defendant. We find no abuse of the court's broad discretion here.

5

¶ 28.    Finally, defendant argues that the order holding him without bail is in derogation of his right to a speedy trial under Articles 10 and 12 of the Vermont Constitution and the Sixth Amendment to the United States Constitution, noting that he cannot be brought to trial within ninety days of his arraignment pursuant to the timeline set forth in Administrative Order 5.  The court below made note of defendant's request for a speedy trial and accordingly directed the case to be placed on the trial list, but observed that other defendants detained pretrial had been waiting longer than defendant for their cases to be heard by a jury.

¶ 29.    Administrative Order 5 provides that "[c]ases in which the defendant is in custody shall proceed to trial within 90 days from the date of arraignment, except for exceptional circumstances, showing cause for temporary postponement."  A.O. 5, § 2.  If the State is not ready for trial within six months of the defendant's arrest and does not present good cause for an extension of time, the criminal complaint may be dismissed either sua sponte or at the defendant's request.  Id. § 3.

¶ 30.    However, Administrative Order 5 is part of the internal operating procedures of the trial courts; we have long recognized that it neither binds the courts to its timeframes nor provides defendants with independent procedural or substantive rights.  State v. Reynolds, 2014 VT 16, ¶ 12, 196 Vt. 113, 95 A.3d 973; State v. Snide, 144 Vt. 436, 441, 479 A.2d 139, 142-43 (1984) ("A.O. 5 does not require a trial court to dismiss a case even if the time parameters have been exceeded.").  And as we have observed, Administrative Order 5, "promulgated in 1972, has proved to set impossibly short deadlines for the pretrial preparation of serious felony cases" such as this one, given the "numerous legitimate reasons for the extended timeframes in these cases." Reynolds, 2014 VT 16, ¶ 13.  Moreover, we can imagine few clearer cases of "exceptional circumstances, showing cause for temporary postponement," see A.O. 5 § 2, than a global public-health emergency.  See State v. Labrecque, 2020 VT 81, ¶ 30, __ Vt. __, 249 A.3d 671 (mem.) (rejecting defendant's argument that pretrial detention resulting from COVID-19 judicial emergency violated his due process rights and noting delay was "a function of the government's efforts to respond to a novel health crisis by establishing procedures which would serve to mitigate the resulting health risk to those who must gather in close physical proximity in order to conduct . . . a trial—including defendant himself"); Explanatory Note—April 6, 2020 Amendment, A.O. 49, at p. 12-13 (explaining that because "jury draws and jury trials require that many people operate in close physical proximity," the COVID-19 pandemic requires their suspension until such time as they may be conducted "consistent with public health, . . . the health and safety of parties, their lawyers, and Judiciary staff").  And in any event, the authority to dismiss a case under Administrative Order 5 is not conferred to the trial court until six months have elapsed following the arraignment, a benchmark which has yet to occur in this case.  Snide, 144 Vt. at 440, 479 A.2d at 142 ("[T]he authority conferred by A.O. 5 . . . requires a delay of six months before it becomes operative.").

¶ 31.    Nor, as defendant seems to suggest, does Administrative Order 5's operation predetermine a speedy-trial violation.  Id. at 441, 479 A.2d at 142-43.  Administrative Order 5 is not the measure of a criminal defendant's constitutional speedy-trial rights.  Reynolds, 2014 VT 16, ¶ 18 (explaining that in contrast to fixed deadline set by statute or order, "strength and utility" of multifactor analysis applied to speedy-trial claims under state and federal constitutions "lies in its flexibility and lack of fixed deadlines").  In any event, to the extent defendant seeks to independently invoke those speedy-trial rights under the State and Federal Constitutions,[*] this

---

[*]    The Sixth Amendment guarantees a "speedy and public trial," while Article 10 guarantees "a speedy public trial" and Article 12 holds that the right to a trial by jury "ought to be held sacred."  U.S. Const. amend. VI; Vt. Const. ch. I, arts. 10, 12.  "In more than two centuries

attempt fails because his request to be released on bail is not an appropriate procedural vehicle for such a challenge. This is so because the only possible remedy for a violation of the speedy-trial right is dismissal of the charge. Reynolds, 2014 VT 16, ¶ 7 (explaining that "the right to a speedy trial differs from other constitutional rights in several respects"). Here, defendant requested relief in the form of his release on conditions pending trial or a trial date on or before June 17, 2021. These remedies are not available under either the state or federal speedy-trial provisions. Id. ¶ 17. Thus, neither Administrative Order 5, the Vermont Constitution, nor the United States Constitution afford any ground on which to overturn the trial court's decision.

¶ 32.     Because we find no merit in any of the three challenges defendant raises on appeal, the order holding him without bail is affirmed.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

☒ Publish

_____
Harold E. Eaton, Jr., Associate Justice

☐ Do Not Publish

_____
William D. Cohen, Associate Justice

---

since the adoption of the first Vermont Constitution . . . the Vermont Supreme Court has never discerned a more stringent standard than the Sixth Amendment." Reynolds, 2014 VT 16, ¶ 17. Because defendant does not argue that the Vermont Constitution affords greater protection than the federal analog on this point, we proceed here under the assumption that the state and federal speedy-trial protections are coterminous.