NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 36

No. 22-AP-314

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Larry L. Labrecque | March Term, 2023 |

John R. Treadwell, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellant.

Allison N. Fulcher of Martin, Delaney & Ricci Law Group, Barre, for Defendant-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner and A. Alexander Donn, Appellate
   Defenders, Montpelier, for Amicus Curiae Office of the Defender General.


PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.     **EATON, J.**  Following a guilty verdict, the criminal division granted defendant Larry L. Labrecque's motion to dismiss for a violation of his right to a speedy trial. The State appeals, and we reverse and remand.

### I.  Facts & Procedural History

¶ 2.     On July 23, 2018, the State charged defendant with aggravated sexual assault of a child in violation of 13 V.S.A. § 3253a(a)(8), aggravated sexual assault in violation of 13 V.S.A. § 3253(a)(9), and sexual assault in violation of 13 V.S.A. § 3252(d).  The same day, he was arraigned and preliminarily held without bail.  He remained held without bail through his trial,

which commenced on May 9, 2022. A total of approximately 45.5 months passed between charging and trial.

¶ 3. In that time, the parties engaged in ample motion practice, and a global pandemic occurred. We have reviewed this case four times previously in the context of bail appeals and have detailed the procedural history therein. See State v. Labrecque (Labrecque I), 2020 VT 81, 213 Vt. 635, 249 A.3d 671 (mem.); State v. Labrecque (Labrecque II), 2021 VT 58, 215 Vt. 641, 261 A.3d 632 (mem.); State v. Labrecque (Labrecque III), 2022 VT 6, __ Vt. __, 273 A.3d 642 (mem.); State v. Labrecque (Labrecque IV), 2022 VT 20, __ Vt. __, 279 A.3d 118 (mem.). Here, we overview the events relevant to the disposition of this appeal.

¶ 4. A trial-ready date was originally set for May 2019; however, this date was moved to November 2019 pursuant to the parties' stipulation. In September 2019, defendant's counsel moved to withdraw, and the criminal division granted this request the next month. New counsel was appointed, and the parties stipulated to a March 2020 trial-ready date. The criminal division set jury draw for mid-April 2020.

¶ 5. In response to the COVID-19 pandemic, this Court declared a judicial emergency on March 9, 2020, A.O. 48, and temporarily suspended jury trials on March 16, 2020, A.O. 49. The criminal division accordingly continued the April jury draw.

¶ 6. Defendant filed a motion for bail review on March 13, which was denied on March 18. On April 1, he filed a motion to reconsider, citing concerns for the health and safety of incarcerated persons during the pandemic, which was consolidated with similar motions from other criminal defendants. At a May 12 status conference on the motion, defense counsel argued that due process required defendant's release, citing to his nearly 2-year detention pending trial and "the judiciary's inability to honor [his] speedy-trial rights." The motion was denied in August, and we affirmed. See generally Labrecque I, 2020 VT 81. In that appeal, we rejected defendant's argument that his continued pretrial detention violated his due-process rights protected under

2

Article 10 of the Vermont Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution. Id. ¶ 1. As a part of our due-process consideration, we relied on Sixth Amendment speedy-trial analysis to evaluate " 'the government's responsibility for the delay in proceeding to trial[] and the length of the detention itself.' " Id. ¶ 17 (quoting United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012), as amended (Oct. 9, 2012)).

¶ 7.    On October 20, 2020, defendant filed a motion to dismiss for lack of a speedy trial, which was denied on December 7. The criminal division determined that the length of delay, approximately 28 months at the time, was sufficient to trigger full consideration of the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972), but that the factors together did not weigh in favor of finding a speedy-trial violation.

¶ 8.    Defendant filed another motion for bail review on March 5, 2021, in which he raised due-process concerns with his continued pretrial detention and incorporated reference to defendant's right to a speedy trial as part of his plea for pretrial release on bail or conditions. A hearing was held on May 6, and the motion was denied the same day. After this, defendant filed two more motions for bail review in 2021, resulting in Labrecque II, 2021 VT 58, and Labrecque III, 2022 VT 6. Litigation of both motions involved reiteration of his due-process arguments, among others. No due-process violations were found, and his pretrial detention continued.

¶ 9.    In November 2021, the criminal division scheduled a jury draw for January 10, 2022. However, on January 4, 2022, the criminal division granted defendant's unopposed motion to continue the trial and rescheduled the trial to start on February 8, 2022.

¶ 10.    On January 11, defendant filed a second motion to dismiss for lack of a speedy trial. The criminal division did not act on this motion before the February jury draw and subsequently deferred ruling on the motion.

¶ 11.    On February 8, the day trial was set to commence, the criminal division continued the trial because a necessary State witness was unavailable. The witness was unable to testify in

3

person because she was experiencing symptoms of COVID-19 that prevented her from entering Vermont courthouses under then-existing safety protocols. Defendant declined to waive his Confrontation Clause rights to allow the witness to testify remotely. The same day, defendant moved for bail review, renewing his previous due-process arguments. This bail-review motion was later denied by the criminal division and affirmed on appeal. See generally Labrecque IV, 2022 VT 20.

¶ 12. The criminal division rescheduled the trial for May 2022. A jury was drawn on May 5, and the trial was held from May 9 to May 13. The jury returned a guilty verdict on the lesser-included charge of sexual assault. A sentencing hearing was scheduled for November 23.

¶ 13. On August 5, defendant filed a Rule 29 motion for judgment of acquittal in which his sole argument was that his speedy-trial right had been violated. Following a hearing, the criminal division concluded that defendant's right to a speedy trial was violated and dismissed the case against him with prejudice. As a preliminary matter, the criminal division concluded that, based on this argument, defendant's motion was not properly brought under Rule 29 but was instead a motion to dismiss asserting a speedy-trial violation. Noting that it had deferred ruling on defendant's January 2022 speedy-trial motion, the criminal division elected to treat the motion as one to dismiss for lack of a speedy trial.[1]

¶ 14. The criminal division concluded that the over 45-month delay between charging and trial was sufficient to trigger full consideration of the four factors set out in Barker v. Wingo, 407 U.S. 514. It determined that the length of delay and reasons for delay both weighed against the State, and that defendant consistently asserted his right to a speedy trial. It also found that

---

[1] The criminal division correctly determined that a Rule 29 motion for judgment of acquittal is not the appropriate vehicle for asserting a speedy-trial claim. Rule 29 provides that the criminal division "shall" order judgment of acquittal "if the evidence is insufficient to sustain a conviction." V.R.Cr.P. 29(a). Its sole application is to challenges to the sufficiency of the evidence. Accordingly, the criminal division was right to rely on defendant's motion to dismiss, on which it had previously deferred ruling, when making its speedy-trial determination.

defendant did not establish any actual prejudice; however, it concluded that the length of delay warranted a presumption of substantive prejudice, and that the State failed to rebut this presumption. Accordingly, it presumed that defendant was prejudiced under the fourth factor. Balancing the factors together, it concluded that all four factors weighed, to a greater or lesser extent, in favor of defendant, and therefore, defendant's right to a speedy trial was violated.

¶ 15. The State filed a motion to reconsider, raising arguments primarily focused on the criminal division's conclusions regarding prejudice. The criminal division denied the State's motion. The State appealed.[2]

¶ 16. The State argues that defendant's speedy-trial right was not violated. It concedes that the length of delay necessitates full consideration of the Barker factors; however, it proposes that none of the factors weigh in defendant's favor. Defendant asserts that all the factors weigh against the State and that the State failed to preserve various arguments made under each factor.

## II. Speedy-Trial Analysis

¶ 17. Defendants in Vermont have parallel rights to a speedy trial under Article 10 of the Vermont Constitution and the Sixth Amendment to the U.S. Constitution, applicable to the states via the Fourteenth Amendment. State v. Reynolds, 2014 VT 16, ¶¶ 7, 17-18, 196 Vt. 113, 95 A.3d 973. To determine whether a speedy-trial violation has occurred, we use the test articulated in Barker v. Wingo, which requires us to balance four factors: "the length of the delay, the reason for the delay, the extent to which [the] defendant asserted his speedy[-]trial right, and any prejudice to the defendant caused by the delay." Id. ¶ 8. The first factor, the length of the delay, "serves a dual role"; it acts as a threshold for a delay long enough to trigger full review of the other Barker factors, and if full consideration is triggered, it is balanced along with the remaining factors to

---

[2] Defendant moved to dismiss this appeal for lack of jurisdiction. We denied defendant's motion. See State v. Labrecque, No. 22-AP-314 (Vt. Mar. 27, 2023) (unpub. mem.) [https://perma.cc/6ZVQ-FQFD].

5

determine whether a violation has occurred. State v. Vargas, 2009 VT 31, ¶ 12, 185 Vt. 629, 971 A.2d 665 (mem.) (quotation omitted). If a violation has occurred, the only remedy is dismissal of the charge. Reynolds, 2014 VT 16, ¶ 7.

¶ 18. We employ a mixed standard of review; the criminal division's findings will be upheld unless clearly erroneous but its legal conclusion that defendant's speedy-trial right was violated is reviewed without deference. State v. Young, 2023 VT 10, ¶ 9, __ Vt. __, 292 A.3d 689.

A. Presumptive Prejudice

¶ 19. To trigger a full speedy-trial inquiry, a defendant must show that "the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." Doggett v. United States, 505 U.S. 647, 651-52 (1992) (quotation omitted). When computing time for presumptive prejudice, we exclude "delays accompanying [defendant's] pretrial motions and those resulting from defense-requested continuances." State v. Williams, 143 Vt. 396, 401, 467 A.2d 667, 670 (1983). Because presumptive prejudice is contextual, the amount of time tolerated depends on the circumstances of the case, such as the severity and complexity of the charges. State v. Lafaso, 2021 VT 4, ¶ 12, 214 Vt. 123, 251 A.3d 935.

¶ 20. The time between charging and trial in this case extended from July 13, 2018, to May 9, 2022, a total of roughly 45.5 months. The State argues that the criminal division erred by relying on the total time elapsed for assessing presumptive prejudice. Instead, it asserts that the criminal division should have excluded some time from its computation under this step of the analysis, pointing to "delays" caused by defendant's motions, including those made after the trial was continued due to challenges in holding jury trials during the pandemic. Defendant counters that this argument is not preserved. However, the parties agree that the length of delay here is sufficient to establish presumptive prejudice regardless.

6

¶ 21.    We need not determine whether the State's argument is preserved because it does not change the outcome of this case. Assuming without deciding that the State's argument is preserved, it attempts to deduct too much time. Although courts deduct delays attributable to defendants, time should not be deducted for delays attributable to the logistical problems caused by the COVID-19 pandemic or defense motions made during the time attributable to COVID-19 because such motions did not cause any actual delay. See Young, 2023 VT 10, ¶¶ 11-12 (explaining that COVID delays are attributable to State and deducting delays attributable to defense motions but not due to COVID from length-of-delay analysis). Excluding defendant's 1-month continuance, COVID delays alone constituted approximately 24.5 of the 45.5 total months.[3] A 24.5-month period between charging and trial for three sexual-assault felonies is sufficient to establish presumptive prejudice under our precedent. See Reynolds, 2014 VT 16, ¶ 19 (concluding that 23-month period in sexual-assault case established presumptive prejudice); Vargas, 2009 VT 31, ¶ 13 (concluding that 9-month period in lewd-and-lascivious-conduct case met presumptive prejudice). Accordingly, full balancing is unquestionably required. For purposes of balancing the Barker factors, we will assume that the State's argument is not preserved and rely on the 45.5-month total delay in our analysis.

### B.  Length of Delay

¶ 22.    We now evaluate the weight of the length of delay for purposes of balancing the four Barker factors. See Vargas, 2009 VT 31, ¶ 12 (stating that once presumptive prejudice triggers full review, length of delay is weighed with other factors). This case took longer to reach

_____

[3] The State argues that the time attributable to COVID is only approximately 17 months—the time during which jury trials were suspended in Windsor Criminal Division plus the 3-month continuance for the unavailable witness. This framing is too narrow. We have explained that "[d]elays resulting from logistical challenges presented by the COVID-19 pandemic are attributable to the State." Young, 2023 VT 10, ¶ 12. For this particular case, the COVID-delays include not only the time for which jury trials were suspended but also the time it took to reschedule defendant's jury trial once it was safe to do so.

7

trial than would typically be necessary given its nature and complexity. Cf. Young, 2023 VT 10, ¶ 11 (concluding 20.5-month delay did not weigh heavily in favor of defendant facing complex felony charges). Although defendant was charged with three felonies and witnesses were required for trial, a trial was originally anticipated to occur approximately 24 months after arraignment. Because it took nearly 2 additional years for defendant to reach trial than was required for the nature of this case, the length of delay weighs in favor of defendant.

## C. Reasons for Delay

¶ 23. Barker sets up a framework for assigning weight to different types of reasons for delay. 407 U.S. at 531. First, "[a] deliberate attempt to delay the trial in order to hamper the defense" is "weighted heavily against the government." Id. Second, "[a] more neutral reason such as negligence or overcrowded courts" is "weighted less heavily" against the government. Id. Third, "a valid reason, such as a missing witness" serves "to justify appropriate delay." Id. Delays attributable to the defendant also do not weigh against the government. Lafaso, 2021 VT 4, ¶ 14.

¶ 24. For approximately 20 months, from July 3, 2018, to March 16, 2020, this case was subject to relatively normal pretrial scheduling, during which the parties stipulated to scheduling orders. There was nothing undue or negligent about this initial time period. Id. ¶ 16 (explaining that time attributable to stipulated discovery does not count against State). Although the parties quibble about the exact timeline of various motions and the "delays" they caused, we need not delve into these arguments. See Young, 2023 VT 10, ¶ 13 (declining to adopt similar characterizations of motions that were part of "ordinary pretrial proceedings"); see also State v. Ariegwe, 2007 MT 204, ¶ 63, 167 P.3d 815 ("Because the question is one of 'delay,' the court does not consider any actions taken by the State or the accused which do not result in a postponement of the trial date."). This time period does not weigh in favor of defendant.[4]

---

[4] The State argues that, under the law-of-the-case doctrine, the criminal division erred in finding that this time period was attributable to stipulated discovery orders. It points to Labrecque

¶ 25.     For the next roughly 21.5 months, from March 2020 through January 2022, the trial was delayed because of the COVID-19 pandemic.  We have previously explained that "[d]elays resulting from logistical challenges presented by the COVID-19 pandemic are attributable to the State."[5]  Young, 2023 VT 10, ¶ 12.  This is because, although the pandemic was "an extraordinary moment in modern history that presented unprecedented logistical challenges" for bringing defendants to trial, "the ultimate responsibility" for addressing these logistical challenges "must rest with the government."    Id. ¶¶ 12, 17 (quotations omitted).    Pandemic-related delays accordingly fall into the same "more neutral" category of reasons for delay as court congestion. Id. ¶ 17 (quotation omitted).  However, we take this opportunity to further explain how this time should be weighted and why.

---

I, 2020 VT 81, ¶ 25, and Labrecque III, 2022 VT 6, ¶ 25, in which this Court stated, relying on the bail court's findings, that this period was, at least in part, attributable to defendant's actions. Defendant counters that this argument is not preserved.  We need not answer this question because its resolution would not alter the outcome of this appeal.  For purposes of our analysis, we accordingly rely on the criminal division's finding that this period was the product of normal pretrial scheduling.  Because we treat the pre-COVID period as normal pretrial scheduling, we also do not address defendant's proposal that the State did not preserve its argument that a substantial portion of this time was attributable to defendant's filings.

[5] We note that other courts have taken a different path.  Some have called pandemic-related delays "truly neutral."  State v. Ambriz, 2022-NCCOA-711, ¶ 67, 880 S.E.2d 449; see also State v. Summers, 653 S.W.3d 155, 164 (Mo. Ct. App. 2022); Vlahos v. State, 2022 WY 129, ¶ 54, 518 P.3d 1057; United States v. Keith, 61 F.4th 839, 853 (10th Cir. 2023).  Others have concluded that such delays are justified and therefore not attributable to the government.  See State v. Peters, 2022 ND 196, ¶ 7, 981 N.W.2d 874; United States v. Pair, 522 F. Supp. 3d 185, 194-95 (E.D. Va. 2021) (collecting sources); State v. Mize, 2022-Ohio-3163, ¶¶ 64-65, 195 N.E.3d 574 (rejecting speedy-trial claims premised on pandemic-related delays); Labbee v. State, 869 S.E.2d 520 (Ga. Ct. App. 2022), cert. denied (2022) (concluding that "neither party is responsible for the delays caused by the COVID-19 pandemic" (quotation omitted)); Ali v. Commonwealth, 872 S.E.2d 662, 675-76 (Va. Ct. App. 2022) (concluding that pandemic-related delays are "justified" or "valid" reason for delay and do not weigh against government (quotation marks omitted)); State v. Paige, 977 N.W.2d 829, 840 (Minn. 2022) (concluding pandemic-related delay did not weigh against government because it was "external factor outside of the court's control" rather than a "systematic issue[] within the court system itself").  At least one court has declined to "categorically assign" weight to COVID-related delays, instead considering "the circumstances of the particular case." State v. Pate, No. A-1-CA-39508, 2023 WL 3033314, at *3 (N.M. Ct. App. Apr. 19, 2023). Notably, we can find no court that has suggested that delays induced by the pandemic should be afforded much weight at all against the State.

9

¶ 26. The U.S. Supreme Court's provision of broad categorizations should not distract us from our principal task—to engage in a case-specific inquiry. See Barker, 407 U.S. at 522 ("[A]ny inquiry into a speedy[-]trial claim necessitates a functional analysis of the right in the particular context of the case."). In other words, though these categories are essential guidelines, they do not instruct courts to assign the exact same weight to every delay falling within them regardless of context. Thus, delays caused by negligence and overcrowded courts both fall into the "more neutral" category, but they do not necessarily garner the same weight in all cases. See Ariegwe, 2007 MT 204, ¶¶ 68-69 (addressing institutional delay and negligence separately); but see Kennedy v. Superintendent Dallas SCI, 50 F.4th 377, 383, 385 (3d Cir. 2022) (treating court congestion and government negligence as one). In cases involving court congestion, "the weight against the prosecution and in a defendant's favor is less onerous and more easily outweighed by late demands and low thresholds of prejudice than cases of intentional or negligent delay caused by the prosecution." United States v. Perkins, 374 A.2d 882, 883-84 (D.C. 1977).

¶ 27. Thus, delays attributable to the courts' response to the pandemic are a "more neutral" reason like overcrowded courts, but they also weigh differently than regular court congestion. COVID-related delays "represent a highly unusual situation when compared to prolonged delays outside of the context of a global pandemic." Young, 2023 VT 10, ¶ 12 (brackets omitted) (quotation omitted). "Stemming the spread of COVID-19 [was] unquestionably a compelling interest . . . ." Roman Cath. Diocese of Brooklyn v. Cuomo, __ U.S. __, __, 141 S. Ct. 63, 67 (2020). In suspending jury trials, we acknowledged that the "suspension of jury trials implicates fundamental constitutional rights," but explained that, at the time, it was "virtually impossible that jury draws or jury trials would be consistent with public health, as well as the health and safety of parties, their lawyers, and Judiciary staff." Explanatory Note—April 6, 2020 Amendment, A.O. 49 [https://perma.cc/HNS6-N234]. The courts were tasked with solving the problems presented by the pandemic in order to safely bring defendants to trial; therefore, the

character of the delay is certainly distinguishable from ordinary court congestion. See Reynolds, 2014 VT 16, ¶ 21 (explaining that "[w]hile the responsibility for providing adequate interpretation services lies with the government," where "[g]enuine difficulties developed with the process of ASL interpretation," "delay was for neutral reasons and d[id] not weigh in defendant's favor").

¶ 28. Here, the criminal division did not make any finding that there was negligence with respect to COVID-related delays attributable to the courts.[6] We will not, as defendant requests, assume, absent any such finding, that these delays were negligent; nor are we persuaded by the argument that the government is "implicitly negligent" with regard to COVID delays simply because it is the government's burden to bring defendant to trial. To the contrary, the delays were neither "unwarranted" nor "for an improper purpose." Other courts have rejected similar arguments that government responses to the pandemic should weigh against the state when the defendant "never even attempts to establish" that the government could have prevented the suspension of jury trials or provides evidence on how the government could have acted with more urgency. Pair, 522 F. Supp. 3d at 194 (quotation omitted); see also Labbee, 869 S.E.2d at 530 (concluding that pandemic delays should "not be weighed negatively against the [s]tate" and pointing out that defendant provided no evidence to establish that court response to pandemic was inappropriate); Ali, 872 S.E.2d at 675-76 (stating record supported trial court's finding that court response to pandemic was not negligent). In fact, we have previously stated with regard to the case before us that the pandemic delay "is not the result of malfeasance or neglect." Labrecque I, 2020 VT 81, ¶ 30. The absence of negligence supports our conclusion that, although COVID delays are attributable to the State, we will accord those delays very little weight in this case.

---

[6] The criminal division's dismissal order does not contain an affirmative finding of no negligence. Instead, it states that the "delay was not for an improper purpose." Similarly, in its order denying the State's motion to reconsider, it addresses the State's argument that negligence or intentionality is required in order for a court to presume substantive prejudice by rejecting the argument that negligence is required but does not affirmatively state that no negligence occurred.

11

¶ 29.   From January 2022 through February 2022, the trial was delayed due to defendant's continuance.  This month is attributable to him.

¶ 30.   From early February to May 2022, the trial was continued because an essential State witness had symptoms of COVID-19.  She was therefore unable to enter the court building to testify in person under applicable administrative directives, and defendant declined to waive his Confrontation Clause rights to permit the witness to testify remotely.  The criminal division determined that the witness was unavailable and a continuance was necessary.  Because the parties and criminal division agreed that the rescheduled trial would require a new jury draw, the trial was set for May 2022.  We agree with the criminal division's characterization of this 3-month continuance as a result of logistical difficulties incurred by COVID-19.  See Peters, 2022 ND 196, ¶¶ 7-8 (concluding that delay resulting from compliance with pandemic guidelines when juror contracted COVID-19 was caused by COVID-19 and therefore did not weigh against state).  We therefore give this time very little weight.

¶ 31.   In sum, breaking down the roughly 45.5-month period between charging and trial, there were approximately 20 months of ordinary pretrial proceedings, 24.5 months of pandemic-related delays, and a 1-month defendant-initiated delay.  Overall, this factor is neutral and does not weigh in favor of a speedy-trial violation.  See Young, 2023 VT 10, ¶ 17 (concluding that second factor was neutral where pre-pandemic time was due to ordinary trial preparation appropriate for type of case and remainder of time was entirely due to pandemic).

D.  Assertion of Right

¶ 32.   Next, we evaluate the extent to which defendant asserted his right to a speedy trial. Barker, 407 U.S. at 528.  Assertion of the right is not a box to be checked but a "matter of degree." Lafaso, 2021 VT 4, ¶ 29.  We consider the full context of the case, "such as a defendant's knowing failures to object to delays, defense counsel acquiescence in long delay, and the 'frequency and force' of the defendant's speedy[-]trial objections."  Id. ¶ 26 (quoting Barker, 407 U.S. at 528-29).

12

More aggressive assertions, such as a motion for an immediate trial, weigh more heavily in a defendant's favor than less aggressive assertions, like a motion to dismiss for lack of a speedy trial or an objection to a continuance. Id. ¶ 29.

¶ 33. Defendant did not assert his speedy-trial right prior to May 2020, and waiting to assert his right for 22 months indicates a failure to aggressively assert the right. See Young, 2023 VT 10, ¶ 19 (explaining that 20-month lag between arrest and first assertion of speedy-trial right weighed against defendant). Notably, he also failed to move for an immediate trial at any point in the 45.5 months he awaited trial. See Lafaso, 2021 VT 4, ¶ 30 (identifying that failure to move for immediate trial weighs against defendant).

¶ 34. However, from May 2020 onwards, defendant continuously asserted his right to a speedy trial in some form. He mentioned speedy trial in his various bail arguments when asserting that his pretrial detention violated his substantive due-process rights under Article 10 of the Vermont Constitution and the Fifth Amendment to the U.S. Constitution. Although he could have fashioned these arguments clearer, and a due-process challenge to pretrial detention is not a particularly aggressive assertion of one's speedy-trial right, the existence of these arguments nonetheless demonstrates defendant's demands for a speedy trial. See id. ¶ 30 (weighing defendant's complaints regarding prolonged pretrial incarceration in considering aggressiveness of assertion of right); see also State v. Blodgett, 2021 VT 47, ¶ 31, 215 Vt. 633, 257 A.3d 232 (mem.) (explaining that motion for release on conditions or trial before set date was not proper vehicle for speedy-trial challenge because remedies differ). He also filed two motions to dismiss for lack of a speedy trial on October 10, 2020, and January 11, 2022.

¶ 35. Looking at both the extensive period of time for which defendant failed to assert his right and the extensive period of time for which he did consistently assert the right, although not in the most aggressive manner, we conclude that this factor weighs minimally in favor of

defendant.[7]  Compare Reynolds, 2014 VT 16, ¶ 24 (concluding that assertion of right weighed for defendant but not heavily where defendant filed speedy-trial motion to dismiss 18 months after arraignment and from that point forward expressed desire to go to trial but never moved for immediate trial), with Lafaso, 2021 VT 4, ¶ 32 (concluding that factor did not weigh in favor of defendant where defendant filed one speedy-trial motion to dismiss and made complaints regarding pretrial detention but failed to request immediate trial).

### E.  Substantive Prejudice

¶ 36.    Fourth we address prejudice, "the most important factor."  State v. Recor, 150 Vt. 40, 42, 549 A.2d 1382, 1384 (quotation omitted).  To distinguish it from presumptive prejudice, we will refer to this factor as "substantive prejudice."  Butler v. Mitchell, 104 F. Supp. 3d 166, 180 (D. Mass. 2015), aff'd, 815 F.3d 87 (1st Cir. 2016).  Substantive prejudice is "assessed in the light of the interests of defendants which the speedy[-]trial right was designed to protect," including "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  Barker, 407 U.S. at 532.  "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Id.  The substantive-prejudice factor can be satisfied with a demonstration of actual prejudice or the existence of nonparticularized, presumptive prejudice.  Butler, 104 F. Supp. 3d at 180; see also Young, 2023 VT 10, ¶ 24.

¶ 37.    Defendant did not establish actual prejudice in this case.  Regarding defendant's pretrial detention, it was "undoubtedly at the limit of what is acceptable," however, the 45.5-month delay did not tip the balance towards a showing of actual prejudice on this interest.  Labrecque IV, 2022 VT 20, ¶ 30.  Defendant also did not present evidence of anxiety or concern beyond

---

[7]  Because we conclude that this factor weighs minimally in favor of defendant, it is not necessary to address defendant's assertion that the State waived any argument that this factor does not weigh in defendant's favor.

generalized assertions shared by any accused, which, although serious and relevant, were insufficient to demonstrate actual prejudice. See Goodrum v. Quarterman, 547 F.3d 249, 263 (5th Cir. 2008) (concluding that generalized expressions of anxiety were "nominal showing of prejudice" and were "insufficient to sustain" speedy-trial claim where defendant did not develop record to support claim of prejudice). Lasty, reviewing the trial record in detail, including defense strategy and witness testimony, the criminal division found that the delay did not impair the defense. See State v. Unwin, 139 Vt. 186, 197, 424 A.2d 251, 258 (1980) (stating that mere possibility of impaired memories is not sufficient allegation of actual prejudice). Defendant does not challenge these conclusions on appeal, and we see no reason to disturb them.

¶ 38. The parties' arguments primarily concern nonparticularized, presumptive prejudice. The criminal division concluded that the delay in this case merited an application of nonparticularized, presumptive prejudice and that the State failed to rebut this presumption. On appeal, the State argues that nonparticularized, presumptive prejudice may only be applied when there is some wrongdoing on behalf of the State, whether intentional or negligent—which was not the case here. Defendant proposes that the State's argument is not preserved, that wrongdoing is not required for an application of nonparticularized, presumptive prejudice, and that even if wrongdoing is required, the COVID-19 delays were the result of the State's implicit negligence.

¶ 39. As a preliminary matter, we conclude that the State's arguments are preserved. Here, the purpose of the preservation rule is satisfied because the parties had full opportunity to litigate the issue below, the criminal division addressed the issue on the merits, and the record is sufficient to afford meaningful review. See In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270-71 (2001) ("The very purpose of the preservation rule is to ensure that the original forum is given an opportunity to rule on an issue prior to our review."); see also State v. Sprague, 2003 VT 20, ¶ 12, 175 Vt. 123, 824 A.2d 539 (concluding defendant's argument preserved under similar reasoning); United States v. Garcia, 936 F.3d 1128, 1131-32 (10th Cir. 2019) (same). Although

raising issues for the first time in a motion to reconsider is certainly not best practice and may not suffice to preserve issues for appellate review in other situations, the State has met our preservation requirements here.

¶ 40.    The concept of nonparticularized, presumptive prejudice comes from Doggett, in which the Court explained that "affirmative proof of particularized prejudice is not essential to every speedy[-]trial claim." 505 U.S. at 655. It recognized that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Id. Where the delay between the defendant's indictment and arrest was 8.5 years and the government was negligent in its pursuit of the defendant for 6 years, the Court concluded that the defendant was entitled to a presumption of substantive prejudice. Id. at 657-58. In that case, the government did not persuasively rebut the presumption. Id. at 658.

¶ 41.    There is no hard and fast rule for when substantive prejudice may be presumed under Doggett. United States v. Erenas-Luna, 560 F.3d 772, 779 (8th Cir. 2009). Courts have taken a variety of approaches to locate this tipping point.[8] We have observed that, generally, where "the government prosecutes the case with 'reasonable diligence,' " a defendant must demonstrate actual prejudice in order to prevail on his speedy-trial claim, no matter how great the delay. Young, 2023 VT 10, ¶ 24. In other words, nonparticularized, presumptive prejudice is often, but not exclusively, limited to cases where the delays attributable to the government are intentional or negligent. Id. Although some courts have concluded that the passage of time attributable to the government alone, absent any negligence, triggers an application of nonparticularized, presumptive prejudice, they have not generally done so for delays less than 5 or 6 years. See Jackson v. Ray, 390 F.3d 1254, 1263 (10th Cir. 2004); Goodrum, 547 F.3d at 260. This Court has

_____

[8] For an overview of various approaches that do not explicitly require negligence or bad-faith efforts, see Butler, 104 F. Supp. 3d at 181 n.7. For examples of courts explicitly requiring negligence or bad-faith efforts, see Ex parte Walker, 928 So. 2d 259, 267 (Ala. 2005), and Ali, 872 S.E.2d at 675-76.

never been presented with a case in which it has presumed substantive prejudice absent negligent or intentional delay.

¶ 42.   We conclude that defendant is not entitled to a presumption of substantive prejudice.  Here, there was no negligent or intentional delay on behalf of the State.  For the first 20 months, the parties stipulated to orders and defendant did not raise any speedy-trial concerns, essentially agreeing that ordinary, pretrial preparations for the complexity and severity of the case necessitated not having a trial during this time.  For another 24.5 months in total, the delays were caused by the pandemic.  Although these delays were attributable to the government, they were not negligent and in fact weigh even less than other logistical delays like court congestion.  Although defendant opines that these delays were implicitly negligent, we already rejected that argument above.  Because there was no negligence here, this case is unlike Doggett, in which the effects of official negligence compounded over a 6-year period.  505 U.S. at 657.

¶ 43.   Further, assuming without deciding that Doggett envisions a sufficiently lengthy pretrial period such that substantive prejudice must be presumed even in the absence of negligence, this case does not meet that threshold.  The nearly 4 years between charging and trial here falls below the 5-year point commonly mentioned in other jurisdictions.  Goodrum, 547 F.3d at 260; see also Doggett, 505 U.S. at 656 (implying that 8.5-year delay would not require presumption of substantive prejudice if government pursued defendant with "reasonable diligence").  In support of his argument, defendant relies on a case in which 40 months of delay were attributable to the government, including 18 months due to court congestion, Kennedy v. Superintendent Dallas SCI, 50 F.4th 377, 385 (3d Cir. 2022), and a case involving a 45-month delay where the government intentionally did not bring the accused to trial in order to allow a state case to proceed first and failed to inform the federal court of its decision, United States v. Battis, 589 F.3d 673 (3d Cir. 2009).  This case is unlike those.  Defendant agreed to the first 20 months of pretrial preparations.  See Doggett, 505 U.S. at 658 (stating that defendant's acquiescence can extenuate presumption of

17

prejudice). The 24.5 months of pandemic delays, although very serious, are unlike the "official negligence" of "court congestion." Considering the reasons for delay, in particular the absence of official negligence, we are unpersuaded that the approximately 4 total years here rises to the level anticipated in <u>Doggett</u>. No such presumption of nonparticularized, substantive prejudice is warranted here.

¶ 44. Defendant has not demonstrated actual prejudice nor is he entitled to a presumption of substantive prejudice in this case. The fourth <u>Barker</u> factor weighs against finding a speedy-trial violation.

## F. Balancing

¶ 45. Now, we balance the factors. We do not tally conclusions on each factor nor is any factor determinative; rather, we consider the factors "with such other circumstances as may be relevant to the specific case at hand." <u>Young</u>, 2023 VT 10, ¶ 9 (quotation omitted).

¶ 46. The total length of delay, 45.5 months, is significant and weighs in defendant's favor. Further, once defendant began to assert his speedy-trial right, he did so consistently. However, defendant acquiesced to the first 20 months by agreeing to stipulated discovery orders and never asserting his speedy trial right during that time. It was only after the onset of COVID-19 that defendant began to complain about the pace of the case against him, and when he did so, he used relatively weak methods to assert his right. Thus, although we credited that these two factors weigh for defendant, they do not do so insurmountably.

¶ 47. Moreover, the time between charging and trial is compellingly accounted for. The pre-COVID period constituted ordinary pretrial preparations consistent with the complexity and nature of the serious felony charges against defendant. The subsequent suspension in jury trials and the continuance for the unavailable witness with COVID symptoms, although attributable to the State, had an important purpose—to protect public health. There is no evidence that the delays

resulting from logistical challenges with responding to the pandemic were negligent. Further, defendant even asked for a continuance after courts restarted jury trials.

¶ 48. Most importantly, defendant failed to demonstrate any actual prejudice and was not entitled to a presumption of substantive prejudice. See Recor, 150 Vt. at 42, 549 A.2d at 1384 (stating that prejudice is most important factor). Because of its importance, a failure to demonstrate substantive prejudice is "nearly fatal" to a defendant's speedy-trial claim. United States v. Nixon, 919 F.3d 1265, 1278 (10th Cir. 2019); see also Young, 2023 VT 10, ¶ 24 ("[I]f the government prosecutes the case 'with reasonable diligence,' a speedy-trial claim 'generally' fails 'as a matter of course however great the delay . . . so long as [defendant] c[an] not show specific prejudice to his defense." (quoting Doggett, 505 U.S. at 656)). Defendant argues that a speedy-trial violation may be found in the absence of substantive prejudice. Assuming without deciding that a speedy-trial violation could be found absent both actual and nonparticularized, presumptive prejudice, we are not persuaded that the first three factors warrant such conclusion here. The length of delay and assertion of right weigh in defendant's favor but not overwhelmingly so. In particular, his assertion of the right only weighed minimally in his favor because the assertion was significantly deferred and its forms were relatively weak. We also concluded that the reasons for delay did not weigh in his favor. Considering the actual substance of the factors rather than tallying them for defendant, they do not weigh so strongly for defendant as to render a showing of substantive prejudice unnecessary. See Ariegwe, 2007 MT 204, ¶ 155 (concluding that defendant was not deprived of right to speedy trial where absence of prejudice outweighed length of delay, reasons for delay, and assertion of right).

¶ 49. Considering all the factors together, we conclude that defendant was not deprived of his right to a speedy trial.

19

### III. Conclusion

¶ 50.    Defendant's right to a speedy trial was not violated.  We accordingly reverse the criminal division's dismissal and remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice